UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA THERESA HILL,

              Plaintiff,                      Case No. 2:14-cv-12634
                                         District Judge Avern Cohn
v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
_____/

## RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 13) AND TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 14)

    **I.**      **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment, **DENY** Defendant's motion for summary judgment, **REVERSE** the

Commissioner's decision, and **REMAND** this case to the Commissioner and the

ALJ under Sentence Four of § 405(g) for further consideration consistent with the

report below.

## II.    REPORT

     Plaintiff, Pamela Theresa Hill, brings this action under 42 U.S.C. §§ 405(g)

and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her applications for social security disability

insurance benefits and supplemental security income.  This matter is before the
United States Magistrate Judge for a Report and Recommendation on Plaintiff's
motion for summary judgment (DE 13), the Commissioner's memorandum in
opposition and cross motion for summary judgment (DE 14), Plaintiff's reply (DE
15), and the administrative record (DE 10).

### A.      Background

Plaintiff protectively filed her applications for benefits on November 8,
2010, alleging that she had been disabled since June 16, 2006, at age 42.  (R. at
137.)  Plaintiff alleges disability as a result of rheumatoid arthritis, "slight"
depression, heart attack, torn muscles in the rotary cuff of her left shoulder, and
migraine headaches.  (R. at 178.)  Plaintiff's application was denied.  Plaintiff
sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ
Jerome B. Blum held a hearing on October 2, 2012 and subsequently determined
that Plaintiff was not disabled within the meaning of the Social Security Act.  (R.
12-63.)   On May 19, 2014, the Appeals Council denied Plaintiff's request for
review.  (R. at 1-4.)  ALJ Blum's decision became the Commissioner's final
decision.  Plaintiff then timely commenced the instant action.

### B.      Plaintiff's Medical History

Plaintiff's medical record spans from 2005 through 2012.  In his opinion, the
ALJ considered the records and opinions of Plaintiff's treating physician, Meraj

Yunus, M.D., her treating cardiologist, Theodore Schreiber, M.D., and consultative examiners Cynthia Shelby-Lane, M.D. and Katherine Karo, M.D.

In 2005, Plaintiff was diagnosed with rheumatoid arthritis affecting her hips, knees, and hands. (R. at 266.) On April 12, 2008, Plaintiff underwent diagnostic testing at DMC University Laboratories, which revealed an elevated rheumatoid factor. (R. at 512.) On October 12, 2006, Plaintiff reported "dramatic improvement in symptoms after Prednisone." (R. at 257.)

On April 8, 2008, Plaintiff presented to St. John Macomb Hospital with left shoulder pain, left arm numbness, near syncope, and a headache lasting for two months. (R. at 282 and 376.) She was hospitalized for two days. Srinivas Koneru, M.D. concluded that there was no evidence of myocardial infarction.[1] (R. at 283.) Plaintiff underwent a radionuclide myocardioal perfusion study, which revealed no stress induced ischemic change and an ejection fraction of 65%.[2] (R. at 288.) On March 28, 2011, Dr. Schreiber performed a diagnostic surgical procedure, which

---

[1] In Administrative Law Judge Jerome Blum's opinion, he notes that Plaintiff "suffered a mild heart attack in 2008." (R. at 17.) However, it appears from the records regarding Plaintiff's April 8, 2008 – April 9, 2008 hospital stay that she was actually found to be negative for myocardial infarction. (R. at 282-291.)

[2] Ejection fraction "represents the percentage of the blood in the ventricle actually pumped out with each contraction." 20 C.F.R. § 404 Subpt. P, App 1 (D). "A normal ejection fraction is greater than 55% . . . ." *Diamond v. Comm'r of Soc. Sec.*, 154 F. App'x 478, 480 (6th Cir. 2005).

revealed an ejection fraction of 45-50% and an impression of nonobstructive coronary artery disease.  (R. at 307-08.)

Following a December 24, 2011 car accident, Plaintiff underwent a brain MRI on January 12, 2012 after complaining of headache, dizziness, and a lump on her head.  (R. at 418.)  The MRI revealed "areas of abnormally increased signal intensity" and that a differential diagnosis includes multiple sclerosis.  (Id.)  She underwent an MRI of the cervical spine on January 15, 2012, which revealed "straightening of normal cervical lordosis" and "moderate loss of C5-6 intevertebral disc space and height," along with minimal annular disc bulge at C5-6.  (R. at 417.)  She sought treatment for her headaches at the Harper Neurology Clinic on November 6, 2012.  (R. at 516.)  She was recorded as alert and oriented, with 5/5 strength in her upper and lower extremities, and able to ambulate effectively.  Evanthia Bernitasas, M.D., referred Plaintiff to the Pain clinic and recommended that Plaintiff discontinue Imitrex.  (R. at 517.)

Plaintiff began treatment at the University Psychiatric Centers on March 8, 2012.  (R. at 420.)  Plaintiff complained of depressive symptoms, complicated by a 2008 heart attack.  Her global assessment functioning ("GAF") was assessed as 45.[3]  (R. at 423.)  She was diagnosed with major depressive disorder and started on

---

[3] The GAF scale was used to report a clinician's judgment of an individual's overall level of functioning.  Clinicians selected a specific GAF score within the ten-point range by evaluating whether the individual was functioning at the higher

Cymbalta.  On March 23, 2012, she noted that she was "doing better" and was proud of herself.  (R. at 426.)  Her GAF score was assessed as 60.[4]  (R. at 429.)  She again reported feeling better on May 4, 2012, but indicated she had not been taking an increased dose of Cymbalta and was advised to do so.  (R. at 431.)  Her GAF was assessed as 59.  (R. at 432.)  On June 8, 2012, she was again advised to take her Cymbalta and her GAF was assessed as 65.  (R. at 435.)

## C.    Hearing Testimony

### 1.    Plaintiff's Testimony

Plaintiff testified that she suffered from rheumatoid arthritis, heart disease, severe migraines, depression, anxiety, and stress.  (R. at 32.)  According to Plaintiff, her joint pain and migraine headaches make it difficult to get up and to lie down, and sometimes she sleeps all day.  (R. at 34.)  She testified that her left

---

or lower end of the range.  *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33–34 (American Psychiatric Association, 4th ed. text rev. 2000) (DSM-IV-TR).  A GAF score of 41-50 was indicative of serious symptoms (e.g., suicidal ideation, severe obsession rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  DSM-IV-TR at 34.  However, "the most recent version of the DSM does not include a GAF rating for assessment of mental disorders."  *Bryce v. Comm'r of Soc. Sec.*, No. 12-CV-14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014).

[4] A GAF score of 51-60 was indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  DSM-IV-TR at 34.

shoulder was in constant pain and that therapy was ineffective.  (R. at 36.)
Plaintiff averred that she also had problems with her back, which resulted from
being in a car accident.  (R. at 36.)  She testified that she had trouble lifting heavy
objects.  (R. at 37.)  Plaintiff testified that she was admitted to the hospital for a
heart condition in April 2011, but that the hospital recommended that she exercise
rather than considering placing a stent.  (R. at 35.)  Plaintiff indicated that,
although she struggled with depression in the past, she began receiving treatment
in the spring of 2012 and was prescribed Paxil and then Cymbalta.  (R. at 41.)  She
noted that the Cymbalta helped, but admitted that she was not taking it faithfully.
(R. at 42.)  In addition to Cymbalta, Plaintiff testified that her current medications
included a nitroglycerine patch, Vicodin, Mobic, and Ambien.  (R. at 39.)

       At the time of the hearing, Plaintiff lived in a house with her three sons, aged
18, 15, and 10. (R. at 38.)  She testified that she drove the children to and from
school every day, guided them in housework, and did light cooking.  (R. at 38-39.)
Plaintiff averred that she was a Jehovah's Witnesses and that she "might go out
and do a little preaching."  (R. at 40.)  She noted that she loved to roller skate and
cook, but specified that that she does not cook as much anymore.  (R. at 40.)
Plaintiff testified that she can walk without resting, stand in one place, and sit
without standing for 45 minutes to an hour.  (R. at 44.)  Plaintiff testified that she
can lift ten to fifteen pounds, but not on a repetitive basis.  (R. at 45.)

Plaintiff testified that her last job was as a home healthcare aide. (R. at 33.) Prior to that, Plaintiff worked at an elementary school coordinating the curricula, filing, and tutoring. (R. at 33.) Plaintiff also worked as a teacher's aide from 2000-2002. (R. at 33-34.)

### 2. Vocational Expert Testimony

Kimberly Warner testified as the Vocational Expert ("VE") at the hearing. (R. at 52-55.) The VE described Plaintiff's past relevant work as a school secretary, which was a skilled position at the medium exertional level as performed. (R. at 52-53.) The VE testified that the basic clerical skills Plaintiff obtained from her past relevant work could transfer to sedentary, semiskilled work. (R. at 53.) She then indicated that this involved "a couple of DOTs" with about 8,000 jobs existing in the Southeast Michigan area, and about 16,000 in the state. The ALJ then asked the VE to consider Plaintiff's physical complaints, limitations on lifting under five pounds, and limitations on sitting and standing.[5] (R. at 54.) The VE testified that such restrictions would be work preclusive. She also testified that more than a few unscheduled breaks and more than one unscheduled absence per month would preclude competitive employment. (R. at 54.)

---

[5] The VE was referring to the job descriptions provided in the Dictionary of Occupational Titles ("DOT").

## D.  THE ADMINISTRATIVE DECISION

On February 21, 2013, the ALJ issued his decision.  (R. at 12-27.)  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since June 16, 2006.  (R. at 14.)

At step two, the ALJ found that Plaintiff had the following severe impairments: rheumatoid arthritis, migraine headaches, unstable angina, myocardial infarction, and a torn muscle rotary cuff in her left shoulder.  (R. at 14.) The ALJ further concluded that Plaintiff's antral gastritis, torn muscle in her left shoulder, and depression were not severe impairments.  (R. at 14-15.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the  review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 16.)

At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff "has the residual functional capacity to perform semiskilled sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  (R. at 16.)

At step five, the ALJ determined that Plaintiff was unable to perform her past relevant work as a school secretary, at the skilled and medium exertion level, as a home care attendant, at the semiskilled and medium exertion level, as a teacher's aide, at the semiskilled and light to medium exertion level, or as a home aid, at the unskilled and light exertion level.  Considering her age on the alleged onset date (42), her level of education, work experience, and RFC, the ALJ concluded that Plaintiff had "acquired work skills from past relevant work  that are transferrable to other occupations with jobs existing in significant numbers in the national economy," and was therefore not disabled within the meaning of the regulations.  (R. at 20.)

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

### E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.  ANALYSIS

In her motion for summary judgment, Plaintiff asserts two main statements of error.  First, she contends that the ALJ did not establish the existence of other work at step five because he failed to propound a proper hypothetical to the VE.  Specifically, Plaintiff submits that her "deviation from abilities below 'the full range of sedentary level employment' was not submitted to the vocational expert," and the effects of her multiple medications were ignored.  (DE 13 at 14.)  Second, she asserts that the ALJ erred in assessing her RFC by improperly discounting her credibility and the weight provided to the opinions of her treating physicians.  The

Commissioner opposes Plaintiff's motion, maintaining that she is entitled to a grant of summary judgment because substantial evidence supports the ALJ's conclusions. The Undersigned agrees with Plaintiff as to the first argument and with the Commissioner as to the second. For the purposes of clarity, I will first address Plaintiff's argument with respect to her RFC, followed by an analysis of the ALJ's findings at step five.

### 1.    Substantial Evidence Supports the ALJ's Conclusions with Regard to Plaintiff's RFC

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(3), 416.927(e). "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an

ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8, 1996 WL 374184, at *6-7.

Plaintiff asserts that the ALJ erred in his RFC articulation by making an impermissible credibility finding and failing to give proper weight to Plaintiff's treating physician.  Because the arguments are somewhat intertwined, as Plaintiff asserts that her credibility is bolstered by the opinions of her treating physician, I will first address the ALJ's weighing of opinion evidence, followed by his credibility determination.

### a.    Weight of Opinion Evidence

Plaintiff asserts that the ALJ erred in his RFC assessment in part by discounting the opinion of her treating physician, Dr. Meraj Yunus.  Additionally, Plaintiff contends that the ALJ improperly minimized the consultative examiner Katherine Karo's opinion that precludes competitive employment.

### 1.    Treating Physician Dr. Yunus

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(d).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about

the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 CFR § 404.1527(e)(2)(i). The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants. Id.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[6] Specifically, if an ALJ does not give a treating source's opinion controlling weight:

---

[6] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson*, 378 F.3d at 544 (discussing 20 C.F.R. § 404.1527).  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion."  20 C.F.R. § 416.927(d)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted).  The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

---

significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

Id.

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.

The ALJ provided good reasons for discounting the treating physician's opinion here, and substantial evidence supports this conclusion. As a matter of clarity, the ALJ weighed three of Dr. Yunus' statements. The ALJ assigned "no weight" to Dr. Yunus' October 13, 2011 statement that Plaintiff was "unable to hold any job" because her "disability affects any bending/holding[,] sitting or standing for long periods of time." (R. at 343.) He indicated that the opinion was vague, unquantified, and not supported by the medical evidence. (R. at 19.) The ALJ did, however, adopt the October 25, 2011 Medical Source Statement, in which Dr. Yunus opined that Plaintiff could lift ten pounds, stand/walk for at least two hours, sit an unlimited amount of time with a sit-stand option, and had limited fingering. (Id.) Dr. Yunus completed an additional Medical Source Statement on August 14, 2012, in which she opined that Plaintiff could sit and stand up to two hours in an eight-hour workday, would need to shift positions, would require unscheduled breaks daily, and would be absent from work for more than four days

16

per month.  (R. at 439-443.)  The ALJ did not give the opinion great weight

because it was so inconsistent with the prior Medical Source Statement, with no

explanation for the deviation.  (R. at 19-20.)

Plaintiff challenges the ALJ's treatment of Dr. Yunus' August 14, 2012

opinion, asserting that the medical record provides support for the additional

limitations.  Plaintiff asserts that, in the time between the October 25, 2011 and

August 14, 2012 Medical Source Statements, she was in an automobile accident

(R. at 401), underwent a cervical MRI which revealed multilevel degenerative

changes of the cervical spine (R. at 417), underwent a brain MRI which showed

irregularities consistent with multiple sclerosis or an autoimmune disorder (R. at

418), had a failed straight leg raise test, and was assessed with a GAF of 45.

Defendant counters that, two months after Dr. Yunus' opinion, Plaintiff indicated

that she could sit, stand, and walk for sixty minutes, which contradicted the

opinion.

During the same time period, however, Plaintiff indicated that she was doing

better, had started walking (R. at 428), and had more energy (R. at 431).  *See West*

*v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697 (6th Cir. 2007) (noting that it was

proper for the ALJ to discount the opinion of a treating physician where it was

contradicted by the claimant's own statements).  Additionally, she was assessed as

having "no physical limitation of sitting, standing and walking" on October 12,

2012.  (R. at 499.)  Finally, as the Commissioner points out, there is substantial

evidence in the months following Dr. Yunus' August 2012 opinion that Plaintiff

was assessed as being in no acute distress, having 5/5 muscle strength in the upper

and lower extremities, a normal gait, normal reflexes, a negative straight-leg raise

test, and a normal range of motion.  (R. at 516, 498-99, and 503-04.)  Moreover,

Plaintiff's hearing testimony was that she could walk without resting, stand in one

place, and sit without standing for 45 minutes to an hour.  (R. at 44.)  She indicated

that she could lift ten to fifteen pounds, loved to roller skate, and went out to

preach as part of her religion.  (R. at 40 and 45.)  Substantial evidence in the record

supports the ALJ's conclusion to discount Dr. Yunus' August 2012 opinion.

The ALJ also complied with the *Wilson* requirements by noting that Dr.

Yunus had been treating Plaintiff since 2006, discussing the consistency of Dr.

Yunus' three opinions, and adopting the findings of the previous opinion.

Accordingly, the ALJ appropriately considered Dr. Yunus' August 14, 2012

opinion under the regulations and substantial evidence supports his conclusions.

### 2.      Consultative Examiner Dr. Karo

Plaintiff asserts that the ALJ improperly minimized the opinion of

consultative examiner Dr. Katherine H. Karo, D.O.  Dr. Karo administered a

consultative examination on October 12, 2012.  (R. at 497-499.)  At the

examination, Dr. Karo found Plaintiff to be alert and oriented, able to ambulate

without the use of an assistive device, able to heel walk, toe walk, and tandem walk, able to sit and stand without assistance, and able to bend, stoop, carry, push, and pull.  (R. at 499.)  She concluded that Plaintiff had no physical limitation of sitting, standing, or walking.  (Id.)  Dr. Karo also completed a medical source statement, in which she indicated that Plaintiff could sit and stand for three hours and walk for two hours in a normal workday, and that she should not be exposed to unprotected heights.  (R. at 506 and 509.)  The ALJ gave Dr. Karo's opinion "significant weight," except for the restrictions imposed on sitting, standing, and walking.   (R. at 19.)  The ALJ noted that such limitations were not supported by the evidence in the record, or by Dr. Karo's own findings that Plaintiff had no physical limitations.  (Id.)

As a consultative examiner who saw Plaintiff only once, the treating source rule does not apply to Dr. Karo's opinion.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) ("[A] plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship. . . . .").  Instead, the ALJ must only "consider" the findings of a consultative examiner.  404.1527(e)(2)(i).  Here, the ALJ considered Dr. Karo's own findings that Plaintiff had "no physical limitation of sitting, standing and walking," and concluded that the restrictions imposed in her medical source statement were inconsistent.  (R. at

19 and 499.)  The ALJ's treatment of Dr. Karo's opinion was appropriate and
supported by substantial evidence.

### b.   Assessment of Plaintiff's Credibility

"The ALJ's assessment of credibility is entitled to great weight and
deference, since he [or she] had the opportunity to observe the witness's
demeanor."  *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008).
Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported
by substantial evidence."  *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th
Cir. 1997).  "Discounting credibility to a certain degree is appropriate where an
ALJ finds contradictions among the medical reports, claimant's testimony, and
other evidence."  *Walters,* 127 F.3d at 531.

When assessing an individual's credibility, "the ALJ must [first] determine
whether a claimant has a medically determinable physical or mental impairment
that can reasonably be expected to produce the symptoms alleged."  *Calvin v.
Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011).  The ALJ made this
finding here, concluding that Plaintiff's medically determinable impairments could
reasonably be expected to cause the alleged symptoms.  (R. at 19.)

Upon making such a finding, the ALJ must next "consider the entire case
record" to "evaluate the intensity, persistence, and functional limitations of the
symptoms considering objective medical evidence."   20 C.F.R. § 404.1529(c)(1-

3); Soc. Sec. Rul. 96-7p.  A non-exhaustive list of relevant factors to be considered by the ALJ include: 1) the claimant's daily activities; 2) location, duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of medication; 5) treatment, other than medication; 6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and 7) other factors concerning functional limitations and restrictions.  *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p; *see also Ewing v. Astrue*, No. 10-cv-1792, 2011 WL 3843692, at *9 (N.D. Ohio, Aug 12, 2011) ("Social Security Ruling 96-7p requires such factors to be *considered*, not *discussed* . . . .") (emphasis in original) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)).  In his or her opinion, the ALJ must "provide a sufficiently specific explanation for his [or her] credibility determination so that it is clear to the individual and any subsequent reviewers the weight given to the individual's statements and the reasons for that weight."  *Malcom v. Comm'r of Soc. Sec.*, No. 13-15188, 2015 WL 1539711, at *7 (E.D. Mich. Mar. 27, 2015) (citing *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1997)).

Plaintiff challenges the ALJ's credibility determination for three reasons. First, she asserts that the ALJ failed to take into account the conditions she purports to have acquired after her October 25, 2011 automobile accident.  Second,

she maintains that the ALJ improperly cited her failure to comply with medical treatment as a reason she was less credible.  Finally, she contends that the ALJ's consideration of her roller skating and going door-to-door with her church was misplaced.  The Undersigned finds no merit in any of these arguments.

### a.   Conditions Subsequent to Automobile Accident

As to her first argument, as addressed above, the ALJ properly discounted Dr. Yunus' opinion following her car accident.  Her argument with respect to the ALJ's adoption of the opinion of her treating cardiologist, Theodore Schreiber, M.D., is unclear and unavailing.  Dr. Schreiber completed a Medical Source Statement on November 11, 2011 in which he opined that Plaintiff could occasionally lift ten pounds, stand/walk for at least two hours, and sit without restrictions.  (R. at 347-49.)  Plaintiff disagrees with the ALJ's decision to adopt the opinion because  it did not take into account her new, post-automobile accident issues, despite the fact that the opinion was issued three weeks after the car accident.  Although Plaintiff points to evidence in the record that reflects *possibly* worsening impairments, *substantial evidence* in the record, as discussed above, supports the ALJ's conclusions and the Court is not tasked with conducting a *de novo* review of the evidence.

22

**b.       Failure to Comply with Medical Treatment**

Plaintiff's assertion that the ALJ improperly discounted her credibility, due to her failure to comply with her medication regimen is without merit. (R. at 18.) Plaintiff takes issue with the ALJ's reliance on the following note from a January 31, 2012 office visit: "she is supposed to be taking Coreg 3.125 daily, aspirin 82 mg, Mobic daily once, Vicodin, Tramadol and Ambien. She does not take it because it is not working." (R. at 524.) Plaintiff points out that the note is unclear as to whether Plaintiff is noncompliant with one or more of her medications. (DE 13 at 19.) Defendant counters that Plaintiff does not "explain how noncompliance with one medication is any less damaging than noncompliance with another." (DE 14 at 18.)

Evening if the ALJ had ignored the January 31, 2012 note, substantial evidence in the record, including her own testimony, supports the impression that Plaintiff was noncompliant with her doctors' directives or inconsistent in taking her medications, including her further failure to take Prednisone and Cymbalta. (R. at  42, 260, 351, 431). The ALJ also noted a failure to fully comply with physical therapy. (R. at 18, as noted at R. 260). Noncompliance is a sufficient reason to discount credibility. *See Sias v. Sec'y of Health & Hum. Servs.*, 861 F. 2d 475, 480 (6th Cir. 1988) (concluding that the ALJ properly discounted the claimant's credibility where he failed to follow prescribed treatment); S.S.R. 96-

7p, 1996 WL 374186, at *8 (noting that "the individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").

### c.   Roller Skating and Door-to-Door Activities

Finally, Plaintiff challenges the ALJ's assertion that she was less than credible because of her statements about roller skating and door-to-door religious activities.  Plaintiff points to the ALJ's statement that she "goes roller skating on occasion and frequently participates in Jehovah's Witness activities, including walking door-to-door to engage in conversations with people," and contends that the ALJ put too much emphasis on these statements, which Plaintiff qualified at various points in the record.  (R. at 19, 303.)  However, Plaintiff testified at the hearing that, "I love to roller skate.  I do love to cook, which is something I don't do often anymore . . . ."  (R. at 40.)  Notably, while qualifying her ability to cook, Plaintiff made no such qualification with respect to roller skating.  She also testified that, as part of her religion, she "might go out and do a little preaching." (Id.)  There is evidence in the record that Plaintiff meets with church members twice per week and "does door to door visits often" as an active member in her church.  (R. at 303.)  The ALJ did not err in taking such activity into consideration. *See, e.g., Sneed v. Comm'r of Soc. Sec.*, No. 12-cv-15203-DT, 2014 WL 861525, at

*20 (E.D. Mich. Mar. 5, 2014) (taking into account Plaintiff's testimony that she went door-to-door for religious work).  The ALJ did not misstate Plaintiff's own testimony and was therefore entitled to rely on it to evaluate her credibility.

Furthermore, the ALJ pointed to objective evidence in the record, including a September 2008 CT scan and a January 2012 MRI, along with Plaintiff's testimony that she drove her children to school daily, as evidence that her complaints of back and neck pain were not entirely credible.  (R. at 38.)  The ALJ, therefore, provided a sufficiently specific explanation for discounting Plaintiff's credibility, by considering her reported daily activities, the medical evidence in the record, and her treatment with medication.  Accordingly, Plaintiff's credibility arguments do not, on their own, merit a recommendation that the case be remanded.

### 2.   Substantial Evidence Does Not Support the ALJ's Finding at Step Five

Plaintiff asserts that the ALJ's step five finding was not supported by substantial evidence because the ALJ did not present a valid hypothetical to the VE.  Defendant counters that the ALJ's opinion, though "a bit confusing," demonstrated that Plaintiff could perform other work in the national economy pursuant to Social Security Administration Regulations, § 404.1598, App. 2, Table No. 1, § 201.22 ("the grid").  (DE 14 at 22.)  I find Plaintiff's argument persuasive.

When, as here, an ALJ concludes that a claimant does not have the RFC to perform his or her past relevant work at step four, the burden shifts to the Commissioner at step five to show that Plaintiff "possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This requires the Commissioner to "make a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (internal citations omitted).

The Commissioner can accomplish this by employing the grids, found at 20 C.F.R. Pt. 404, Subpt. P, App. 2.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  However, "if the characteristics of the claimant do not identically match the description in the grid, the grid is only used as a guide to the disability determination." *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 528 (6th Cir. 1981).  Furthermore, the grids take into account only exertional limitations, which are defined as when the limitations "imposed by [the claimant's] impairment(s) and related symptoms, such as pain, affect only [the claimant's] ability to meet the strength demands of jobs."  20 C.F.R. § 404.1569a(b).  Where a claimant suffers from a nonexertional "impairment that significantly diminishes his [or her] capacity to work, but does not manifest itself as a limitation on strength . . . rote application of the grid is inappropriate." *Abbott v. Sullivan*, 905 F.2d 918, 926

(6th Cir. 1990).  Assistance of a VE is "advisable . . . where an individual's

exertional RFC does not coincide with the full range of sedentary work."  Soc. Sec.

Rul. 83-12, 1983 WL 31253, at *3.

I agree with the Commissioner that the ALJ's method in this case was,

indeed, "a bit confusing."  Plaintiff correctly notes that the ALJ employed the

assistance of a VE at the hearing, but did not ask the VE any hypothetical

questions.  (*See* R. at 52-55.)  The closest he came was the following:

> The claimant has a number of physical complaints, the chest pain and
> the pain from diagnosed arthritis in all joints that she's testified to,
> which is fairly severe, and limitations on lifting under five pounds,
> limitations on sitting and standing.  Would she be able to do [her past
> relevant] jobs based on the testimony?

(R. at 54.)  To which the ALJ responded that she "[did] not believe so."  (Id.)

In his opinion, the ALJ appears to base his holding on the VE's testimony,

using grid rule 201.22 as a framework.  Such reliance on the testimony of a VE in

response to a hypothetical question may provide substantial evidence at step five

that the claimant has the vocational qualifications to perform substantial gainful

activity that exists in the national economy "only if the question accurately

portrays [the claimant's] individual physical and mental impairments."  *Howard v.*

*Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (internal citations omitted).

"A response to a flawed hypothetical question is not substantial evidence and

cannot support a finding that work exists which the Plaintiff can perform."
*Edwards v. Barnhart*, 383 F. Supp. 2d 920, 927 (E.D. Mich. 2005).

Here, the ALJ states that the VE "was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills."  (R. at 21.)  A review of the hearing transcript, however, reveals that the VE was not asked such a hypothetical.  Instead, the ALJ merely asked the VE to describe Plaintiff's past relevant work and whether Plaintiff's skills could be transferred to other sedentary positions.  Significantly, the VE was not asked to consider Plaintiff's RFC.  The VE identified "about 8,000" semiskilled sedentary positions in Southeast Michigan, but did not indicate the DOTnumbers or what those jobs might be.  Nor did the ALJ ask the VE whether the jobs she identified conflicted with the DOT.  *See Teverbaugh v. Comm'r of Soc. Sec.*, 258 F.Supp.2d 702, 705 (E.D. Mich. 2003) (remanding where the ALJ failed to ensure there was no conflict with the DOT and the VE did not provide DOT numbers).  The ALJ's hypothetical to the VE, as much as there was one, was not sufficient to establish substantial evidence for his step five finding.

Defendant argues that the ALJ committed harmless error by doing more than was necessary.  Specifically, she maintains that because the ALJ consistently found

28

that Plaintiff was capable of "sedentary work without restriction," he should have "skipped calling the VE, applied grid rule 201.22 directly, and found Plaintiff not disabled." (DE 14 at 24-25.) However, the ALJ states both that Plaintiff "has the residual functional capacity to perform semiskilled sedentary work" and, a few pages later, that Plaintiff's "additional limitations do not allow [her] to perform the full range of sedentary work." (R. at 16 and 21.) It is not fully clear to the Undersigned what the ALJ determined about Plaintiff's ability to do the full range of sedentary work.

Nevertheless, even applying grid rule 201.22 directly does not necessarily result in a finding of disability. The Sixth Circuit has described the Court's responsibility in such cases as follows:

> The duty of the reviewing courts is to ensure that the regulations are applied in accordance with their spirit, their purpose and the bounds of the due process clause. *Crucial to such an evaluation is the guarantee that each of the four component factors of the grid coincide with the characteristics of the claimant before the grid is applied*. It must be stressed that each of the four findings of fact necessary to application of the grid must be supported by substantial evidence before the disability determination based on the grid should be upheld by the appellate courts. Rote application of the grid cannot be countenanced. The incorrect application of the guidelines will invalidate the disability determination.

*Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (emphasis added). Rule 201.22 provides that a finding of "not disabled" is appropriate where a younger individual, age 45-49, has a high school education or

29

more, is skilled or semi-skilled, and whose skills are transferrable.  Social Security

Administration Regulations, § 404.1598, App. 2, Table No. 1, § 201.22.  Here,

Plaintiff was "born on November 29, 1963, and was 51 years of age on the date of

the hearing."  (DE 15 at 1.)   She was therefore a "person approaching advanced

age" according to the grid.  The ALJ did not address this in his opinion and only

cited to grid rule 201.22 in support of his conclusions.  *See Bowie v. Comm'r of

Soc. Sec.*, 539 F.3d 395, 396-97 (6th Cir. 2008) (Where a claimant is "within a few

days to a few months of reaching an older age category, and using the older age

category would result in a determination that [he or she] is disabled, [the ALJ] will

consider whether to use the older age category after evaluating the overall impact

of all the factors.").  Nor did Defendant, in her response brief, address Plaintiff's

age or cite to another grid rule that would more appropriately describe Plaintiff.

The Court's responsibility is to ensure that each of the four component

factors coincide with Plaintiff's characteristics.  In this case, Plaintiff has identified

at least one factor that does not coincide with her characteristics.  Although there

are potentially other grid rules that could support a finding of not disabled, such as

201.15, others support a finding of disabled, such as 201.14.  The Court's

jurisdiction does not allow for it to resolve such conflicts in the evidence.  *See*

*Bass*, 499 F.3d at 509.

Defendant asserts that the ALJ's deficiency in opinion-writing is not a sufficient reason for remand.  (DE 14 at 25.)  Here, however, the ALJ's opinion was more than just deficient.  It simply did not provide sufficient information for the Undersigned to perform a meaningful review.  *See Andrews v. Comm'r of Soc. Sec.*, No. 08-cv-12296, 2009 WL 1505791, at *5 (E.D. Mich. May 27, 2009) (Noting that "the ALJ's decision essentially fails to provide a basis for meaningful judicial review and could be reversed on that ground alone.").  The ALJ appears to have relied on the testimony of the VE, but failed to ask any hypothetical questions of the VE.  Even if the ALJ intended to rely on grid rule 201.22 alone, he failed to address whether Plaintiff can do a full range of sedentary work and only considered her as a younger individual, despite her turning 51 during the pendency of the proceedings.  The ALJ's step five conclusions are not supported by substantial evidence and therefore the Undersigned recommends remand to the Commissioner.

### 3.    Remand Under Sentence Four

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v.*

*Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citing 42

U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to

"enter upon the pleadings and transcript of the record, a judgment affirming,

denying, or reversing the decision of the [Commissioner], with or without

remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient

support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-

four remand for further consideration." *Morgan v. Astrue,* 10–207, 2011 WL

2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher,* 17 F.3d at 174); *see also*

*White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) ("If a court

determines that substantial evidence does not support the [Commissioner's]

decision, the court can reverse the decision and immediately award benefits only if

all factual issues have been resolved and the record adequately establishes a

plaintiff's entitlement to benefits." (internal quotations omitted)).  Here, there is

insufficient support for the ALJ's findings and the factual issues have not been

resolved.  Accordingly, the Undersigned recommends that the Court remand this

case under Sentence Four.

### G.   CONCLUSION

Due to the errors outlined above, Plaintiff is entitled to an order remanding

this case to the Social Security Administration pursuant to Sentence Four of 42

U.S.C. § 405(g).  Accordingly, the Undersigned **RECOMMENDS** that the Court

**GRANT** Plaintiff's motion for summary judgment (DE 13), **DENY** Defendant's motion for summary judgment (DE 14), **REVERSE** the Commissioner of Social Security's non-disability finding, and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 15, 2015               s/Anthony P. Patti
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I certify that a copy of this document was sent to parties of record on Monday, June 15, 2015, electronically and/or by U.S. Mail.

                                   s/Michael L. Williams
                                   Case Manager to the
                                   Honorable Anthony P. Patti